OPINION
{¶ 1} Appellants Michael and Diane Tiefenthaler appeal the decision of the Court of Common Pleas, Fairfield County, which dismissed their action for breach of real property contract against Appellees Edward and Robert Tiefenthaler, et al. The relevant facts leading to this appeal are as follows.
 {¶ 2} Edward Tiefenthaler, the brother of Appellee Robert and Appellant Michael, owned a 3.31 acre parcel of land fronting Tollgate Road in Fairfield County. This parcel was one piece of a larger tract of 40 acres once owned by the parents of Edward, Robert, and Michael. In June 2000, appellants signed a contract with Robert to purchase said parcel, even though Edward was the actual owner. It is undisputed that appellants were aware of Edward's ownership. The contract called for a closing within thirty days of execution. Nonetheless, the first closing date was not scheduled until August 25, 2000. Due to Robert's unavailability on that date, the closing was then rescheduled for September 25, 2000. However, Robert thereafter indicated via a telephone call that Edward would not be able to appear for closing on the latter date. Neither side thereafter actively pursued another closing appointment. However, during the month of August 2001, appellants found out that the parcel in question had been listed for sale by a realtor.
 {¶ 3} On October 24, 2001, appellants filed a complaint for breach of contract, requesting specific performance, and further seeking an implied easement for an underground drainage system on the property. On December 4, 2001, appellants amended their complaint to seek monetary damages and to add as defendants Jeffrey and Kelly Ruby, who were seeking to purchase the property. The matter was set before a magistrate for a consolidated hearing on the complaint and a preliminary injunction request on December 10, 2001. At the conclusion of appellants' case, Robert moved for a dismissal pursuant to Civ.R. 41(B)(2). The magistrate granted the motion to dismiss, and issued a decision with findings of fact and conclusions of law on January 9, 2002. The magistrate essentially concluded that appellants had failed to perform their end of the contract, thus excusing Robert's performance. In addition, the magistrate determined that appellants had not demonstrated irreparable harm sufficient to warrant injunctive relief.
 {¶ 4} Appellants filed an objection pursuant to Civ.R. 53. The trial court issued a judgment entry on March 20, 2002, modifying the decision in part, but otherwise affirming the dismissal. A judgment entry of dismissal was filed on April 5, 2002. Appellants timely appealed and herein raise the following three Assignments of Error:
 {¶ 5} "I. DEFENDANT ROBERT TIEFENTHALER HAD FULL AUTHORITY FROM DEFENDANT EDWARD TIEFENTHALER TO CONTRACT FOR THE SALE OF THE SUBJECT PROPERTY TO APPELLANTS.
 {¶ 6} "II. BY THEIR CONDUCT, THE PARTIES DID NOT TREAT THE CONTRACT PROVISION FOR CLOSING WITHIN THIRTY DAYS AS AN ESSENTIAL PROVISION.
 {¶ 7} "III. THE TRIAL COURT ERRED IN RULING ON APPELLANTS' CLAIM OF AN IMPLIED EASEMENT WHEN THE MAGISTRATE DID NOT ISSUE FINDINGS OF FACT OR CONCLUSIONS OF LAW ON THE CLAIM, AND RESERVED IT FOR LATER DETERMINATION."
 I. {¶ 8} In their First Assignment of Error, appellants argue that the trial court erred in holding that Robert was neither the agent of nor in privity with Edward regarding the real estate deal. We disagree.
 {¶ 9} "Under Ohio law an agency relationship is a consensual relationship (between two persons) where the agent has the power to bind the principal, and the principal has the right to control the agent. The existence of an agency relationship depends primarily upon the right of the principal to control the agent." Arnson v. General Motors Corp.
(N.D.Ohio. 1974), 377 F. Supp. 209. An agency relationship arises from the agreement of the parties to the existence of the relationship.Bradley v. Farmers New World Life Ins. Co. (1996), 112 Ohio App.3d 696,709, 679 N.E.2d 1178. The party asserting the existence of an agency relationship bears the burden of proof. Grigsby v. O.K. Travel (1997),118 Ohio App.3d 671, 675, 693 N.E.2d 1142. In reviewing a trial court's determination of whether or not an agency relationship exists, we generally do not substitute our judgment for that of the trial court. See, e.g., Auto Owners Ins. Co. v. King (Oct. 20, 1989), Lucas App. No. L-88-35. As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries
(Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 10} According to the testimony presented at trial, Robert had previously been left out of an apportioning of the original Tiefenthaler forty acre farm between the various brothers and sisters. When Robert moved back to Ohio after living for some time in Pennsylvania, Edward wanted to quitclaim to Robert the 3.31 acre parcel in question. Edward and Robert consulted with an accountant and an attorney, and decided that such an avenue would prove advantageous for tax purposes. Robert, who took the stand as if on cross-examination, recalled that they planned to accomplish the quitclaim transfer shortly before or at the time of the closing with appellants. Tr. at 101-102.
 {¶ 11} We find Edward's continued presence in the deal is thus far more attributable to simple convenience than to a principal-agent arrangement. Under such circumstances, we are persuaded that Robert was clearly acting for his own benefit as his own principal rather than acting on behalf of and under the control of Edward, who planned on stepping out of the picture prior to the closing. It is further noteworthy that Robert signed the actual contract in his individual capacity. We therefore find appellants failed to meet their burden of proof to establish the existence of an agency relationship between Edward and Robert, and that competent, credible evidence supported the trial court's finding on this issue.
 {¶ 12} Appellants also argue that Edward and Robert were in privity on the contract, even in the absence of a principal-agent relationship. "Privity has been defined as a mutual or successive relationship to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." Staskey v. Staskey, Jefferson App. No. 97-CE-69, 2000-Ohio-2635, citing Lippy v. Soc. Natl. Bank (1995), 100 Ohio App.3d 37, 47,651 N.E.2d 1364, and Black's Law Dictionary (6 Ed.Rev. 1990), 1199. In addressing the issue of privity, the trial court concluded that "[i]t is true that Edward Tiefenthaler may have indicated that Robert was going to be the owner and that it was Robert's decision whether to sell the land or not, but that alone does not create a contract requiring Edward to sell his property to the Plaintiffs." Judgment Entry at 2. We similarly are unpersuaded that appellants demonstrated the existence of privity. While we presume that Robert eventually will take title to the land in question prior to closing his deal with Jeffrey and Kelly Ruby, at the time of signing the contract with appellants, Robert was merely a recipient of a naked promise regarding the deed, and his ownership was still speculative. As such, we do not find a sufficient demonstration of a true "mutual or successive relationship" to the parcel as between Edward and Robert at the time of Robert's contracting with appellants. Appellants' theory of recovery by reason of privity lacks merit.
 {¶ 13} Appellants' First Assignment of Error is therefore overruled.
 II. {¶ 14} In their Second Assignment of Error, appellants contend the trial court erred in holding the contract unenforceable based on the lack of closing within thirty days of execution. We disagree.
 {¶ 15} In the case sub judice, there is no dispute that the real estate contract contained language requiring closing within thirty days of execution. Plaintiff's Exhibit H, Real Estate Contract, para. 4. Appellants direct us to our opinion in Wardell v. Turkovich (July 31, 1992), Tuscarawas App. No. 91AP070037, in which we reiterated that time of performance is not of the essence in a contract unless made so by its terms, or by act of the parties. Id., citing Hubbard v. Norton (1875),28 Ohio St. 116, at paragraph 4 of the syllabus. We further therein recited 3A Corbin on Contracts (1960) 365, Section 716, as follows:
 {¶ 16} "In an ordinary bilateral contract for the purchase and sale of land, the fact that a specific time is fixed for payment or for conveyance does not make `time of the essence' — at least, it does not make performance at the specified time of the essence. Failure to pay at that time is not per se sufficient to terminate the seller's duty to convey; and failure to convey on the exact date does not per se discharge the buyer."
 {¶ 17} Nonetheless, we are unpersuaded that the trial court in the case sub judice denied appellants' their requested relief merely on a "per se" violation of the thirty-day closing provision. The record reflects that after the September 2000 closing date fell through, appellants took no action to secure the closing over the course of nearly an entire year, despite the fact that the parties are blood relatives and all live in Ohio. The inactivity persisted even though appellants made several observations over the summer of 2001 of individuals scouting the land and the placement of survey stakes thereon. In contrast, our holding in Wardell was based on a seller's attempt to go to a second buyer less than a month after reaching an addendum agreement with the first buyer. Said agreement in Wardell was to extend the original closing date of October 31, 1990, for fifteen days, allowing the first buyer the option of remitting an additional $10,000 in earnest money, with the remaining down payment to be conveyed within a reasonable period of time. Despite the first buyer's payment of the $10,000 sometime between November 3, 1990 and November 15, 1990, seller entered into a contract with Mr. Wardell, the second buyer, on December 4, 1990. The overall arrangements and time frames involved in Wardell are thus distinguishable from the present matter.
 {¶ 18} Appellants also contend that the parties had orally modified the closing date requirements of the contract. It is again undisputed the parties contracted that "any subsequent conditions, representations, warranties or agreements shall not be valid and binding upon the parties unless in writing and signed by all parties." Plaintiff's Exhibit H, Real Estate Contract, para. 4.
 {¶ 19} The Statute of Frauds, codified in Ohio under R.C. 1335.05
provides, in pertinent part:
 {¶ 20} "No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands * * * or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith * * *."
 {¶ 21} However, appellants urge that appellees should not be permitted to raise the Statute of Frauds on appeal, contending that Edward and Robert failed to object at trial to evidence regarding oral modifications to the underlying contract. In support, appellants citeO'Connor v. Mokma (Nov. 24, 1982), Hamilton App. No. C-820015. However, before the First District Court of Appeals reached its conclusion inMokma that an appellant (a buyer and defendant at trial) was "required to object to evidence that the parties orally extended the contract," the Court noted that the appellant did not specifically plead the Statute of Frauds as a defense in his answer per Civ.R. 8(C). Id. at 4. In contrast, a review of the record in the case sub judice reveals that Robert duly pled the Statute of Frauds in his answer, rendering Mokma
inapplicable to the circumstances herein.
 {¶ 22} In regard to Edward, the record does not reveal that he filed an answer, thus raising the question of whether he waived any reliance on the Statute of Frauds. However, in our holding in the First Assignment of Error, we found no merit in appellants' theories of recovery against Edward on principal/agent or privity grounds. As such, appellants' argument in relation to Edward is found moot.
 {¶ 23} Appellants' Second Assignment of Error is therefore overruled.
 III. {¶ 24} In their Third Assignment of Error, appellants contend that the trial court erred in ruling on the issue of implied easement when the magistrate had reserved making a decision on said issue until a later date. We disagree.
 {¶ 25} Civ.R. 41(B)(2) reads in pertinent part as follows:
 {¶ 26} "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. * * *."
 {¶ 27} In the case sub judice, appellants called Steven Rudisill, who farmed some of the Tiefenthaler land, including the parcel at issue, to testify concerning their request for a drainage easement. After Rudisill's testimony was completed, appellants' counsel indicated he had no further witnesses. Tr. at 146. Robert's attorney then moved for dismissal pursuant to Civ.R. 41(B)(2). The magistrate's decision thereafter stated that "[p]laintiff's second claim based on implied easement is reserved for further determination." Magistrate's Decision at 4. The trial court, in ruling on the Civ.R. 53 objection, nonetheless proceeded to find that appellants had failed to meet their burden to demonstrate an entitlement to an implied easement. Judgment Entry at 3.
 {¶ 28} We are unpersuaded that the trial court prematurely or improperly rendered a ruling on the easement issue under these circumstances. Civ.R. 53(E)(4)(b) specifies that upon objection to the magistrate's decision, "[t]he court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." Certainly, "[d]ue process of law pursuant to the Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution requires that every party to an action be afforded a reasonable opportunity to be heard after reasonable notice of such a hearing." Hartmann v. Ohio CrimeVictims Reparations Fund (2000), 138 Ohio App.3d 235, 238, 741 N.E.2d 149, citing Zashin, Rich, Sutula Monastra Co., LPA v. Offenberg (1993),90 Ohio App.3d 436, 443, 629 N.E.2d 1057, 1061-1062. Here, appellants were afforded the opportunity to call their desired witnesses before a magistrate, and the trial court upon review thereafter did not exceed its authority or deprive appellants of due process by proceeding directly to a Civ.R. 41(B)(2) decision on the easement issue.
 {¶ 29} Appellants' Third Assignment of Error is overruled.
 {¶ 30} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Fairfield County, Ohio, is hereby affirmed.
By: Wise, J., Hoffman, P.J., and Farmer, J., concur.
Topic: Real Estate Contract.